The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning, we'll hear argument first in number 20-1442 Barkan Wireless IP Holdings v. Unified Patents, LLC, Mr. Larson. Good morning, Your Honors, Blaine Larson on behalf of the appellant Barkan Wireless. The Board made three errors in this final written decision. First, it misapplied AIT in holding that Samsung and Verizon were not real parties and interests. Second, it interpreted the term regulate data flow in a manner that is inconsistent with the prosecution history. And third, it misconstrued the term unique identity by holding that the unique identity need not be associated with a particular base station. I'll address the appealability issue first. How can you maintain your position about appealability in the light of our decision in ESIP? Yes, Your Honor, the ESIP decision specifically addresses the appeal of an institution decision, not of the Board's final written decision. It wasn't an appeal from a final written decision, was it not? It was, Your Honor, but the patent owner specifically appealed the institution decision and not the final written decision. The panel states it's holding in the first paragraph. It states, we find no error in the Board's obviousness determination and the Board's decision to institute inter partes review is final and non-appealable. The panel repeats that frame several times. What was appealed was the Board's decision to institute. At page 1386 of the opinion, the ESIP opinion even cites some argument from the patent owner in the decision. The patent owner argued it was improper for the Board to consider the IPR petition and institute an IPR. The decision, Your Honor, was specifically addressing whether or not a party can appeal the RPI decision in an institution decision, not in a final written decision. ESIP does not address section 319, which covers the appealability of a final written decision, nor does it address 315E, which covers the estoppel impact of a final written decision for real parties of interest. It's our position that this case did not address the specific issue we are appealing. Similarly, Thrive does not cover either, Your Honor. It does not govern, because Thrive specifically addresses the time bar provision under 315B. Let me see. I'm sorry. Mr. Larson, this is Judge Bryson. Let me see if I understand the implications of your position. If we were to rule in your favor, wouldn't an appellate in a case such as this, in every single case, simply say, well, I'm appealing not just from the institution decision, but from the final written decision? It seems to me this would make ESIP a dead letter. I disagree with that, Your Honor. ESIP specifically addresses the institution ESIP. They had said, we object to the institution and the maintenance of this action before the PTAB. Therefore, we want you to say in your final written decision that there is a violation of the real party and interest requirement. Is it your position that that would then be enough to make a difference in terms of appealability? If so, why wouldn't everybody say exactly that? Yes, Your Honor. I think that is sufficient. If, assuming the board addresses the real party and interest issue in the final written decision, the statute unambiguously says that a party dissatisfied with the board's final written decision, quote, may appeal the decision. There's no clarifying language in Section 319. I think if a party is appealing analysis in the final written decision, that should be appealable. Regardless of whether... Would there ever be a case in which someone would be foreclosed from appealing as long as they said the magic words, and we object to the fact that the board maintained this proceeding after the institution? I apologize, Your Honor. Could you repeat the first half of your question? Yes. What I'm trying to see is if you're making an exception to the ESIP rule that would effectively wipe out the ESIP rule. That is to say, anyone who... Assuming we were to agree with you, anyone who later files a... An appeal, seeking to appeal from the board's position on real party and interest would simply say, and we object to the board's maintenance of its position on real party and interest in the final written decision. Either that or if the board could simply avoid the problem by not mentioning final written... The real party and interest issue in its final written decision. I think the answer, Your Honor, is that ESIP is just an application of 314D. The institution decision can't be appealed. Any analysis in the final written decision is appealable under the statute, and ESIP doesn't address that question. I understand Your Honor's concern about parties just saying, we're appealing the final written decision, but there is an ongoing obligation to update real party and interest throughout a proceeding. The flip side of that argument is that it leaves analysis in the board's final written decision that can't be appealed. We made the argument in our brief. Counsel, this is Judge Hughes. If we agree with you that this is reviewable, what is the remedy you propose? Is it to tell the board... The remedy would be to order the board to correct its final written decision and state that Samsung and Verizon are real parties and interest. I'm not sure we can go back to the institution decision because that's... Well, isn't that the result? Isn't that the result, though? Isn't it your view that if these entities had been identified as real parties and interest, it couldn't have been instituted? Yes, but that's a separate question, Your Honor. That part is not appealable. Your theory is that a board decision on real party and interest wouldn't affect the institution, but that it would affect the estoppel. That's your theory as to why the board should have to decide this, right? Yes, Your Honor. Real party and interest is unique in the IPR provision because it's addressed in 315E, which specifically mentions final written decisions. This is something that's impact... The real party and interest question is something that impacts the final written decision and impacts moving forward and later proceedings as well. This is not something that's just tied to the institution decision. Okay. Unless my colleagues have further questions on this part of it, could we turn to the claim construction? Yes, Your Honor. Let me start with the regulate data flow term. What do you mean by regulating data flow through the gateway? I'm not sure that there's any illumination in the patent as to what that means. What does it mean? I apologize, Your Honor. What does it mean? We know what it doesn't mean. The prosecution... No, but I'm not asking you what it doesn't mean. I'm asking you what it does mean. The claim requires a controller adapted to regulate data flow between the mobile device and the data network, so requires data from a mobile device through a gateway to a packet-based data network. It is establishing a connection from a mobile device through a gateway to a packet-based data network. If the prior art does that, there's no question about that, right? Your Honor, what the prior art teaches is allocating RF channels between a mobile device and the gateway. No, but it teaches a gateway and the signal goes through the gateway, right? What was cited is a signal that goes to the gateway, Your Honor, not through the gateway. More importantly, the specific configuration that the board cited here was distinguished by the patent owner during prosecution history. What does regulating through the gateway mean? What are you talking about? It's transmission between a mobile device through a gateway all the way to a packet-based data network. Just transmission? Just transmission? There doesn't have to be any regulation? There has to be some sort of regulation, but it has to be through the whole channel, Your Honor. It can't be just part of the channel. What's an example of regulation through the whole channel? For example, regulating access to the network would be regulating through the channel, Your Honor. That was something we pointed to in our brief. The error the board made here is that the specific configuration that the board cited, this allocating RF channels, was distinguished by the patent owner. The board never really explains why it reached a contrary result from the examiner. It mentions the argument at 32 and 33 of the final written decision, but it never actually addresses why it reached a contrary position. My last little bit here, I'd like to turn to the unique identity term. The specification specifically distinguishes the board's finding on unique identity. The specification teaches that this unique identity is important because these base stations are mobile and they're designed to be installed by individual users rather than a cellular network operator. And for that reason, it's important that each base station has a unique identity, and that's how the network can track where each base station is and what it is. I don't see the board as saying the opposite, really. I just see them as saying that the base station gets a unique identifier through the SIM card in the phone. Yes, Your Honor, but the patent at column two distinguishes that very configuration. Column two, line 34, or line 35, a novel feature of the base station is a unique property of each device. This allows its use as an add-on base station. In prior art, each phone had a unique identity. However, the base stations had no unique properties. The prior art systems had mobile devices with unique identities that were associated with particular subscribers. The base stations themselves did not. Now, what the board cited as disclosing this limitation was exactly what the specification taught was disclosed in the prior art and distinguished here, Your Honor. Well, what is the board when the board at 39 and 40 says that the SIM card information provides a unique identity achieved by a unique number when the SIM card is added to the base station? They say that adding the SIM card to the base station gives the base station a unique identifier, right? Yes, Your Honor, but that is a unique identifier of a subscriber. It is not a unique identifier of the base station. And, in fact, LucidARM, the reference, teaches that a single base station can have multiple SIM cards installed. Those are SIM cards that are associated with an individual user, not SIM cards that are associated with a base station. When you use an identifier for a base station that's associated with an individual rather than the base station, that's no longer a unique identifier of the base station, which is what the claims require. That's a unique identifier of a user. And the specification in column 2, line 35, and column 12, lines 11 through 12, I apologize, is a configuration. It says prior art systems taught that a mobile device could have its own unique identifier, but a base station did not. This system is different because the base station itself must have a unique identifier that's different from the unique identifier of an individual user or a subscriber. Okay. Unless my colleagues have further questions, I think we're out of time. We'll give you two minutes to rebuttal. Any further questions? Hearing none, we'll hear from Ms. Schoenfeld. Thank you. May it please the Court, under Thrive and ESIP, the Board's real party and interest determination, regardless of whether it's made at institution or in the final written decision, is not reviewable on appeal. And if there's not further questions about this issue, I will yield the remainder of my time. Okay. Hearing none, thank you. Next, we'll hear from Mr. Bajaj. Am I pronouncing that correctly? Yes, Your Honors. Mr. Bajaj. Thank you, though. Okay. Thank you, Your Honors. And may it please the Court, my name is Raghav Bajaj on behalf of Unified Patents. Unified agrees with the Director's positions on reviewability of the real party and interest issue. The determination is institution level under Section 312, and again, Thrive and ESIP Series 2 foreclosed review of the issue. Barkan's attempt to recast the appeal as an appeal from a Section 315E decision fails because there is no determination under that section. Mr. Bajaj, suppose that something happens after institution, but before the final written decision, that would affect the status of real party and interest, and it's raised by the patent owner. Do you think the decision in the final written decision would then be appealable? Your Honor, I am not entirely... It depends on the posture of what happens after that. If the real party and interest facts come out after institution and the Board enters a final written decision, I would still submit that that is not appealable, and I believe that's what Your Honors wrote to that effect in the WIFI 1 dissent. I'd also point to Section 319 and 318. Section 319 authorizes review of the final written decision, but 318 says that the final written decision is with respect to patentability. I don't believe that the issue would still be reviewable merely because it appears in the final written decision. It's still an institution-level decision that if facts come out after institution that the Board should not have instituted, it's still a Section 312 and barred by 314. So even if the Court were to review the issue, there's still no reason to reverse the Board's decision. The Board applied the correct standard as set forth in the trial practice guide and as confirmed by this Court in applications in Internet time. Barkin's issue is with the Board's weighing of the evidence, not of the legal test applied by the Board. This is the type of decision that is reviewed for substantial evidence as the Court found in AIT, and here substantial evidence supports the Board's conclusions. I'd like to turn to the merits of patentability and first the regulating data flow term and how that is met by Ferris. This Court should come to the same conclusion as the Board. Regulating data flow between the mobile device and the packet-based data network requires nothing more than controlling a flow of data between those two endpoints. And the claim language speaks for itself. The claim recites a controller adapted to regulate data flow between the mobile device and the data network. The claim does not recite the phrase through the gateway and does not require regulation of data flow through the gateway. It simply requires controlling a flow of data, and the claims do not provide any further specificity. Barkin is attempting to confuse two issues by suggesting that because data flows through the gateway, it must be regulated through the gateway. But it is not in dispute that data flows through a gateway. What is at issue is where is such data regulated between the two ends. If you look at the prosecution history, isn't there a suggestion there by the patentee that it has to regulate through the gateway? I don't believe that's the case, Your Honor. I believe that in the prosecution history, the portion that Barkin is pointing to are ambiguous on that point. I believe that the applicant was distinguishing the Johnson reference based on the Johnson reference's type of network, meaning between a circuit switch and a packet switch network, and the presence of a gateway at all in Johnson, not whether Johnson regulated data flow through a gateway or that regulating data flow through a gateway is required. Importantly, I recognize Your Honor's confusion as to what through the gateway means. We don't really know what that means, and we don't know... We know what through the gateway means. We just don't know what regulating through the gateway means. That is fair, and I apologize for that, Your Honor. A bit of that confusion is because the specification, as the board pointed out, does not use the word regulate. If we are looking at the intrinsic record and what's in the patent, we resort to the claim language, and regulating between those two endpoints just means regulating anywhere on that path between the mobile device and the packet-based data network. As Your Honor's noted, in Ferris, the prior art reference, data is regulated between the gateway, and that data flows through the gateway and onto the packet-based data network. That is not in dispute here, and so Ferris meets the claim limitation as construed correctly as controlling a flow of data. What do you understand the prosecution history to mean when the examiner says that, if I recall correctly, that the parties agree that there's no controller in the Johnson prior art? In the Johnson prior art, the examiner confirmed in prosecution that Johnson does not disclose a controller adapted to regulate flow between the mobile device and the data network. The examiner admitted that that was not what Johnson was cited to teach. Instead, the zoo reference, XU, was cited to teach that limitation. The applicant's statements as to Johnson were not material as to whether their claim required through a gateway or not. If this court comes to the same construction as the board, the findings that Ferris anticipates the independent claims must be affirmed. Again, Ferris regulates data flow between the gateway and the mobile device, and that data flows through the gateway and onto the packet-based data network. Turning to the unique identity recitation in claims six through eight, again, the board findings... If I understand your position that, by regulating the choice of the RF frequency, it regulates the first half of the data flow, and that's sufficient, is that what you're saying? That's correct, Your Honor. Okay. Turning to the unique identity recitation in claims six through eight, again, the board's findings here are supported by substantial evidence and should be affirmed. Again, the question turns on one of claim language. The claim recites a gateway comprising a unique identity, and nothing more is required of the unique identity. The claims do not specify the nature of the unique identity, a point which Barkin cannot contest without resorting to it reading in additional limitations not present in the claims text. Based on the claim language, the unique identity is not attributed to or limited to or associated with the gateway. The board's finding that LucidARM discloses a unique identity as claimed is supported by the record. And as was noted, LucidARM operates consistent with one of the examples in the patent itself. The patent discusses insertion of a smart card with a unique number into the base station to achieve the unique identity. LucidARM likewise discusses... Where is that in the patent? I've lost my reference to it. Your Honor, this is at column 11, lines 25 through 28. It says various means may be used to achieve the unique identity. Okay. Yeah. I see it. Okay. And so LucidARM likewise describes configuring a base station by inserting into the base station a claim card or a smart card, and that smart card has a unique number in the form of a private key. Right. So LucidARM's... Sorry? No, no. I see it. Yeah. Thank you. So LucidARM's base station comprises a unique identity in the same manner as the 284 patent's base station comprises a unique identity. This court should affirm the board's finding that LucidARM teaches the dependent claim features. Unless the court has any further questions, I will cede the remainder of my time. Okay. Hearing none. Thank you. Mr. Larson, you've got two minutes. Thank you, Your Honor. Let me start with the regulate data flow term. Page 578 of the appendix is the prosecution history, and Your Honor discussed this with counsel. When the patent owner is describing Johnson, the prior art reference, it literally bolds and underlines the following language, allocating a plurality of channels. And it states on 578 and 579 that allocating a plurality of RF channels is not regulating data flow through the gateway, or not regulating data flow. That's exactly what the board has identified in this case. They have identified the exact feature that was distinguished during prior art, and the board has not explained why it reached a contrary decision. There's no dispute about what the prior art taught in this case, Your Honor. Where is the reference? This is on 579? 578. The top of 578, Your Honor, under the heading, the Johnson reference. Yeah. The second line, there's a bolding of allocating a plurality of channels. Yeah. And then, that is a quote from the Johnson reference itself. And then, on the next page, page 579, the first full paragraph starting with applicant respectfully, there's the fourth line starts, namely, the limitation of regulating data flow through a gateway is neither taught nor suggested by any of the citing references. And then, a couple lines down, further more. They said, they agreed that there was no controller, right? Correct, Your Honor. And the controller is what's doing the regulating. So, Johnson allocates a plurality of channels, and the board said, or the examiner said, that's not regulating data flow. That's just allocating channels. If I briefly turn to you... I'm sorry, but where does the examiner say that exactly? This is the final office action response before the claims were allowed. Right. But what page of the appendix do you have the quote from the examiner? This is... 553, I think. Right. What is it? 553. 553. 553, all right. 552 to 553. Okay. And the... Yes, Your Honor. The very last two words on 552, Your Honor, starts with Johnson, however, and then that sentence proceeds on to page 553. And that is the office action that preceded the discussion on 578 and 579 of this term. The examiner is saying that allocating RF channels does not disclose a controller adapted to regulate data flow. Once again, this is the exact position that the board adopted from the LucidARM reference. I apologize, from the Ferris reference. I can briefly turn to the unique identity term that counsel pointed to column 11, lines 28 through 30 about the smart card. That is a smart card that's associated with an individual user. Earlier in that column...  We're about out of time. You're way over your two minutes. So, unless my colleagues have further questions, I think we're going to have to stop here. Thank you, Your Honor. Hearing no further questions, thank all counsel, the case is submitted.